UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| CYNTHIA K. TESKEY,<br>    *Plaintiff*, | )<br>)<br>) | |
| *vs.* | )<br>) | 1:10-cv-00758-JMS-MJD |
| MICHAEL J. ASTRUE, Commissioner of Social Security,<br>    *Defendant*. | )<br>)<br>)<br>) | |

## **ENTRY REVIEWING THE COMMISSIONER'S DECISION**

Plaintiff, Cynthia K. Teskey, applied for disability insurance benefits ("DIB") through the Social Security Administration in April 2005. [R. 15.] After a series of administrative proceedings, including two hearings in February and November 2008 before Administrative Law Judge ("ALJ") Peter C. Americanos, the agency denied her application. She then filed this action under 42 U.S.C. § 405(g), requesting that the Court review that denial.

## I.
### BACKGROUND

### A. Education and Work History

Ms. Teskey applied for disability benefits at age thirty-five; she is now forty-one years old. [R. 15.] She is a high school graduate with varied work experience as a bridal consultant, daycare attendant, clothing department manager, and office manager of a rental store. [R. 15-16.] As department manager at a clothing store, Ms. Teskey was required to lift up to fifty pounds and remain on her feet for eight hours per workday. [R. 108.] As office manager of a rental store, she reported that she was also required to lift up to fifty pounds and remain on her feet for eight hours per workday, carrying heavy equipment to and from delivery vans. [R. 109.]

Ms. Teskey worked at Target, at times full time, [R. 384], from August or September of 2005 until October 15, 2006, [R. 357-58]. She returned to Target in November 2008, working four to five hours per day. [R. 390.]

**B. Medical Evidence**

In support of her claim of disability, Ms. Teskey cites several physical impairments: congenital spinal stenosis, degenerative disc disease, carpal tunnel syndrome in her right hand and wrist, and asthma. [*Id.*] She claims her physical pain has altered her life to the point that simply getting out of bed in the morning is a "chore." [R. 19.] She describes her pain as being "sharp," "dull," "stabbing," "aching," "throbbing," and "burning." [R. 18.] When asked to describe her pain on a scale of "1" to "10," Ms. Teskey stated her pain was a "10" without medication and an "8" with medication. [*Id.*] However, at her second hearing, Ms. Teskey reduced her pain from a "10" to a level of "8" or "9" when the ALJ told her that a level of "10" would "require emergency room treatment." [*Id.*] She claims that the pain makes it difficult to sleep, and that she must sleep on her back, a position that is not comfortable for her. [*Id.*] Ms. Teskey also says that her pain has forced her children and husband to perform 95% of the household chores for her. [R. 18-19.]

Ms. Teskey was examined in December 2004 and January 2005 by spinal specialist Kevin Macadeg, M.D. [R. 241-44.] Dr. Macadeg found a moderately limited range of motion in Ms. Teskey's lower back, but also determined that Ms. Teskey had excellent strength and no sensory, muscular, or reflexive abnormalities. [*Id.*] Ms. Teskey also underwent magnetic resonance imaging ("MRI") in January 2005, which showed diffuse degenerative disc disease and impingement along her lumbar spine. A discogram in February 2005 was also positive for severe concordant pain and degenerative disc disease along her entire lumbar spine.

After filing for DIB in May 2005, Ms. Teskey continued to work and sought medical treatment from her primary physician, Mark Wyant, M.D. [R. 330.] Ms. Teskey was treated twice by Dr. Wyant between May 2005 and June 2006, each time seeking treatment for bruising on her legs. [R. 337.]

Drs. Whitley and Corcoran, two state agency physicians assessed Ms. Teskey's medical condition in June and July of 2005. [R. 132-38.] These physicians determined that Ms. Teskey was capable of performing a full range of light-exertion work. [*Id.*]

On July 25, 2006, Ms. Teskey underwent a general physical examination with Dr. Wyant. [R. 323-34.] Although Dr. Wyant made no finding with regard to Ms. Teskey's back pain, he referred her to orthopedist Terry Trammell, M.D, whom Ms. Teskey saw on August 30, 2006. [*Id.*] Dr. Trammell found Ms. Teskey to be able to squat and rise without difficulty and advised her to strengthen her trunk through Pilates or aquatherapy. [*Id.*] Dr. Trammell noted only some tenderness and decreased range of motion in her lower back and recommended she avoid bending and twisting motions. [*Id.*]

Ms. Teskey next saw Dr. Wyant on October 12, 2006, at which point she asked for a note excusing her from work for the remainder of October. [R. 335-36.] However, Dr. Wyant's physical examination was normal, with the exception of some tenderness in Ms. Teskey's lower back. [R. 336.] Dr. Wyant referred Ms. Teskey to pain specialist Alexandru Nitu, M.D., who administered epidural pain blocks to her in November 2006 and December 2006. [R. 222-25.] Ms. Teskey did not see a physician again for over eight months, visiting Dr. Wyant in August 2007 for a routine exam. [R. 330-32.]

One year later, at Ms. Teskey's November 2008 hearing, medical expert Richard Hutson, M.D., reviewed her medical record. It was Dr. Hutson's opinion that:

> [Ms. Teskey] would be able to do a full line of sedentary work by definition. I believe she would need to have a sit/stand option, not to leave the work station. She should be allowed to stand up five minutes out of every hour. The five minutes would not have to be consecutive. All of the postural things could be done on an occasional basis except no ladders, ropes or scaffolds. Environmental things, I would avoid concentrated exposure of cold, heat, wetness, humidity and vibration. And no heights or hazardous areas.

[R. 396.]

In March 2009, Dr. Wyant drafted a letter to Ms. Teskey's attorney, stating that Ms. Teskey was not able to "engage in any prolonged standing or physical activity on a regular basis, thus preventing her from engaging in any ongoing employment." [R. 238-39.]

In addition to her back pain, Ms. Teskey reported mild carpal tunnel syndrome in her right (non-dominant) arm. [R. 359.] However, she stated that the carpal tunnel did not significantly affect her day-to-day activities. [*Id.*]

### C. Vocational Expert Testimony

At both of Ms. Teskey's hearings, vocational experts ("VE") testified that thousands of jobs exist that a person with Ms. Teskey's limitations can still perform. At the February 2008 hearing, the VE identified at least 4,300 such jobs in the State of Indiana, each of which requires only a sedentary level of exertion. [R. 376-77.] A different VE testified at the November 2008 hearing, stating that an individual with Ms. Teskey's qualifications and physical conditions could perform Ms. Teskey's past work as an office manager, as well as over 8,800 other sedentary jobs in the state. [R. 401-03.]

## II.
### STANDARD OF REVIEW

This Court's role in this action is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's (and ultimately the Commissioner's) findings. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citation omitted). "Sub-

stantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted). Because the ALJ "is in the best position to determine the credibility of witnesses," *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008), this Court must afford the ALJ's credibility determinations "considerable deference," overturning them only if they are "patently wrong," *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) (quotations omitted).

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court *must* affirm the denial of benefits. Otherwise the Court will remand the matter back to the Social Security Administration for further consideration; only in rare cases can the Court actually order an award of benefits. *See Briscoe v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005).

When evaluating a disability claim, an ALJ must use the following five-step inquiry:

(1) [is] the claimant…currently employed, (2) [does] the claimant ha[ve] a severe impairment, (3) [is] the claimant's impairment…one that the Commissioner considers conclusively disabling, (4) if the claimant does not have a conclusively disabling impairment,…can she perform her past relevant work, and (5) is the claimant…capable of performing any work in the national economy[?]

*Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001) (citations omitted). To properly perform the analysis at Steps Four and Five, the ALJ must first find the disability claimant's residual functioning capacity ("RFC"), which is "the most [the claimant] can still do despite [his or her] limitations." 20 C.F.R. § 416.945(a).

### III.
### THE ALJ'S OPINION

The ALJ rendered a decision according to the five-step inquiry utilized when determining whether a claimant is disabled for the purposes of DIB, ultimately denying Ms. Teskey's claim for benefits after reviewing all five steps.

At Step One, the ALJ stated that Ms. Teskey had performed significant gainful activity ("SGA") since filing for benefits, but later contradicted himself, finding that she had not performed SGA. [R. 15, 22.]

The ALJ did not resolve the case at Step One. He continued to Step Two, where he found that her "congenital and degenerative changes along her lumbar spine" satisfied the requirement of a "severe impairment." [R. 17.] At Step Three, the ALJ determined that Ms. Teskey's impairments were not on the list of conclusively disabling impairments, therefore requiring further analysis at Steps Four and Five. [*Id.*]

Before Step Four, the ALJ determined Ms. Teskey's RFC based on the evidence in the record. In formulating Ms. Teskey's RFC, the ALJ considered many factors. First, the ALJ noted that Ms. Teskey was overweight, although diet and exercise had reduced her weight somewhat. [*Id.*] The ALJ then considered Ms. Teskey's pain as she described it, radiating from her back and into her legs, creating sensations of stabbing, aching, throbbing, and burning. [*Id.*] The ALJ also considered her reports of greatly limited mobility resulting from her pain. [*Id.*]

After analyzing Ms. Teskey's description of her pain, the ALJ turned to the medical records. The ALJ noted that Ms. Teskey has retrololisthesis of the lumbar, facet degenerative changes of the lumbar, and torn, bulging, protruding and herniated discs along the spine. [*Id.*] The ALJ then considered her inability to sleep, perform household chores, or play sports. [*Id.* at 18.]

The ALJ then individually determined the weight assigned to each physician's opinion. [*Id.* at 20.] The opinion of Dr. Wyant, who wrote that Ms. Teskey could not perform any work activities, was discredited entirely by the ALJ. [*Id.*] The ALJ stated that Dr. Wyant's opinion is "neither well-supported by objective medical evidence nor not inconsistent with substantial other

evidence . . . I note the Claimant has worked—sometimes at the SGA level—for significant periods since her alleged onset date." [*Id.*] The ALJ discounted the opinions of the government physicians, Drs. Corcoran and Whitley. [*Id.*] These physicians stated that Ms. Teskey could perform light-level exertion, which the ALJ believed was too strenuous for her. [*Id.*]

The ALJ found Dr. Hutson's opinion to be the most reasonable, and developed Teskey's RFC in accordance with Dr. Hutson's opinion:

> The Claimant can (1) lift and carry ten pounds occasionally; (2) sitting for six hours during an eight hour workday; (3) walking and standing for two hours during the same period; and (4) using hands and fingers for repetitive hand-finger actions. She must be allowed to alternate to alternate [sic] to a sitting or standing position at her work station for five minutes for five minutes [sic] each hour. She can occasionally bend, squat, stoop, crawl, kneel or climb ramps or stairs. She must avoid extreme temperatures, wetness and humidity.

[R. 21.]

The ALJ applied this RFC in Step Four to find that Ms. Teskey could in fact still perform her past work as an office assistant. [*Id.*] Nevertheless, the ALJ continued on to Step Five. "Assuming the Claimant is incapable of performing her past relevant work as an office manager, there are a significant number of jobs she can perform consistent with her medical and vocational profiles." In particular, the ALJ believed Teskey capable of working as a receptionist (4,102 jobs in Indiana), data entry clerk (3,210 jobs), or typist (1,517 jobs). [*Id.*]

## IV.
### DISCUSSION

Ms. Teskey alleges the ALJ committed reversible error at Step One, at the RFC determination, at Step Four, and at Step Five. [Dkt. 17 at 1-2.]

### A. The ALJ's Step One Finding

At Step One, Ms. Teskey argues that the ALJ's conflicting findings at Step One regarding whether she had performed SGA constitute "irreconcilable" findings that merit a remand, *Peter-*

*son v. Chater*, 96 F.3d 1015, 1016 (7th Cir. 1996) (citation omitted). [Dkt. 17 at 9.] In the alternative, she also argues that substantial evidence doesn't support any finding that she performed SGA. [*Id.* at 9-11.]

The Court need not and will not, however, address possible errors at Step One. The ALJ proceeded past Step One in his analysis, and the Commissioner here expressly disclaims any reliance on an adverse Step One finding as a basis to affirm the ALJ's decision. [Dkt. 18 at 7.] Thus, any possible error that the ALJ committed at Step One was harmless. Any such error, therefore, can't form a basis for remand. *Keys v. Barnhart*, 347 F.3d 990, 994-95 (7th Cir. 2003) (describing the harmless-error doctrine "fully applicable to judicial review of administrative decisions" (citation omitted)).

### B. The ALJ's RFC Determination

Ms. Teskey argues that the ALJ committed three reversible errors when computing her RFC: (1) not addressing possible inconsistencies between the ALJ's RFC determination and Dr. Hutson's testimony, (2) making what she believes were materially inconsistent factual findings, and (3) misjudging her credibility. [Dkt. 17 at 18-20.]

#### 1. Dr. Hutson's Testimony

Ms. Teskey accuses the ALJ of impermissibly cherry-picking with respect to Dr. Hutson's testimony, that is, discussing only the portions that supported the ALJ's conclusions while omitting the portions that contradict them. *Goble v. Astrue*, 385 Fed. Appx. 588, 593 (7th Cir. 2010) ("An ALJ is obligated to consider all relevant medical evidence and may not cherry-pick facts to support a finding of non-disability while ignoring evidence that points to a disability finding." (citation omitted)). Specifically, Ms. Teskey faults the ALJ for not discussing three concessions Dr. Hutson made on cross-examination:

- That he couldn't disagree (or agree) with Dr. Wyant's assessment of Ms. Teskey's pain because pain is "totally subjective;"

- That Ms. Teskey's discogram results were consistent with her claims of the existence of pain; and

- That he conceded that her alleged symptoms of degenerative disc disease were "consistent with the record."

[R. 398-99; dkt. 17 at 18-19.] Ms. Teskey contends that those concessions, individually and collectively, are important because they tend to support her treating physician's opinions. That support is important: The ALJ must afford those opinions "controlling weight" if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques and…not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2).

The Court, however, finds no reversible error with respect to this claim. While Ms. Teskey correctly notes that the law prohibits cherry-picking in ALJ's decision, the law is also clear that "[t]he ALJ is not required to address every piece of evidence or testimony presented," so long as he addresses enough to "provide a 'logical bridge' between the evidence and his conclusions." *Getch v. Astrue*, 539 F.3d 473, 480 (7th Cir. 2008) (citations omitted). Ms. Teskey makes no argument that the ALJ has failed to build a logical bridge. Nor does she claim that the ALJ had a pattern of only discussing evidence supporting his conclusion; out of the large evidentiary record, her cherry-picking argument is limited to the failure to discuss the three answers cited above. [*See* dkt. 17 at 18-19.] Further, the concessions aren't particularly powerful; after making the concessions, Dr. Hutson nonetheless opined that they didn't alter his opinion that Ms. Teskey "can perform a full range of sedentary work." [R. 398.] Indeed, even if the statements have some tendency to bolster Dr. Wyant's opinions, Ms. Teskey makes no argument that the

statements overcome the specific reasons that the ALJ gave for discounting Dr. Wyant's testimony; she assigns no error to the ALJ's decision to decline to give "controlling weight" to his opinions. Thus, given the ALJ's otherwise thorough opinion, the ALJ committed no error by failing to specifically discuss Dr. Hutson's answers to the three cross-examination questions that Ms. Teskey has identified.

### 2. Ms. Teskey's Claim of Materially Inconsistent Findings in the RFC

Again invoking the rule in *Peterson* that irreconcilable findings warrant a remand, 96 F.3d at 1016 (7th Cir. 1996), Ms. Teskey argues, [dkt. 17 at 20], that the following portion of the RFC contains internally inconsistent findings:

> The Claimant can . . . (2) sit[] for six hours during an eight hour workday; (3) walk[] and stand[] for two hours during the same period . . . She must be allowed to alternate to alternate [sic] to a sitting or standing position at her work station for five minutes for five minutes [sic] each hour.

[R. 21.] The inconsistency, in her view, is mathematical: Fifty-five minutes per hour sitting times eight hours in the workday means that she needs to sit for seven hours and twenty minutes—not six hours; and five minutes per hour standing times eight hours in the work day means that she can only stand for forty-five minutes—not two hours.

The Court, however, finds no inconsistency in the RFC. Ms. Teskey's counsel has raised the identical argument elsewhere, and it fails here for the same reason it failed before. *See Craig v. Astrue*, 2010 U.S. Dist. LEXIS 82158, *12-13 (S.D. Ind. 2010) (approving a RFC to "stand and/or walk for 2 hours total in an 8 hours workday…; sit for a total of 6 hours in an 8 hours workday; needs to change positions without leaving the worksite every hour for about 5 minutes, the 5 minutes need not be consecutive"). The ALJ found that Ms. Teskey *could* physically stand for two hours during a workday; he didn't find that she physically *needed* to stand for a full two hours. To the extent that Ms. Teskey argues otherwise, she is incorrect.

### 3. The ALJ's Credibility Determination

For her final claim of error regarding the ALJ's RFC finding, Ms. Teskey takes issue with the ALJ's credibility determination—specifically that "[t]he Claimant's allegations about the intensity, persistence and limiting effects of her symptoms are inconsistent with the medical and other evidence." [R. 22.] The scope of the challenge is quite narrow. She argues that the ALJ, in arriving at that credibility finding, failed "to evaluate" her activities of daily living, her treatment apart from medication, and her use of medication. [Dkt. 17 at 22.] Each of those items is included among the list of seven, non-exclusive, types of evidence that an ALJ "must consider." SSR 96-7p (requiring consideration of seven factors, including "[t]he individual's daily activities;" "[t]he type, dose, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;" and "[t]reatment, other than medication, the individual receives or has received for relief of pain or other symptoms."). Had the ALJ specifically opined about the applicability of those factors, she asserts, the ALJ "could have found Teskey credible," thus making the error a non-harmless one. [Dkt. 17 at 22.]

Assuming without deciding that SSR 96-7p requires ALJs to itemize the weight afforded to each of the relevant factors, the ALJ's failure to do so here was harmless. Importantly, Ms. Teskey makes no argument that the ALJ erred in discounting, or rejecting, the other four factors listed in SSR 96-7p. [*See, e.g.*, R. 19 n.5 ("There is no evidence or credible allegation of adverse side effects from these drugs or other medication.").] With respect to the first and third challenged factors, the ALJ explicitly discussed Ms. Teskey's minimal activities of daily living and the strength of her pain medication and obviously decided to afford them little weight. [*See* R. 19 (noting that her treating physician "feels more activity, not less, would be beneficial" and indicating that Ms. Teskey reported "significant improvement on different occasions" as a result of

her medication).] As for treatment apart from medication, Ms. Teskey has been unable to identify any such treatment that undercuts the ALJ's credibility determination. [*See* dkt. 17 at 22; *see also* R. 18 (describing Ms. Teskey's treatment regime as "conservative").]

After reviewing all the evidence in the record, the ALJ accepted Ms. Teskey's testimony that she has significant pain. Indeed, he found that the pain was significant enough that the state reviewing physicians had overestimated her RFC, so he assigned her a lower one. [*See* R. 20.] Given the narrow scope of her credibility challenge and the evidence in the record, the Court cannot find any reversible error in the ALJ's partial discounting of her credibility when setting that RFC.[1]

### C. The ALJ's Step Four Decision

Although the ALJ found Ms. Teskey not disabled at Step Four, he proceeded to Step Five and found her not disabled there as well. [R. 21-22.] As discussed later, there was no error at Step Five, so any errors that may have occurred at Step Four are harmless. As it turns out, however, Ms. Teskey's claims of error at Step Four are misplaced.

A claimant may not obtain disability benefits if the claimant can still perform her past work "either as the claimant actually performed it or as generally performed in the national economy." 20 C.F.R. § 1520. The disability claimant bears the burden of proving that neither alternative applies. *See Briscoe v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005) ("The claimant bears the burden of proof at steps one through four, after which at step five the burden shifts to the Commissioner." (citation omitted)).

---

[1] Even if, as Ms. Teskey claims, the Court can exercise "greater freedom" here to review credibility determinations beyond that normally permitted by the patently erroneous standard, *see Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000) (permitting less deferential review for credibility determinations based on objective factors or implausibilities), the Court would still find no error in the credibility determination.

Because the Commissioner doesn't dispute that Ms. Teskey proved that she can't do her past relevant work as she actually performed it, [*see* dkt. 18 at 12], the only issue is whether the ALJ erred when finding that Ms. Teskey can still perform that work as others in the national economy generally perform it. The problem with the ALJ's adverse finding, according to Ms. Teskey, is that the ALJ characterized her past relevant work as an "office manager," which the VE testified is generally sedentary work under the *Dictionary of Occupational Titles*. [R. 401.] In her unsworn, written work history submitted in connection with her claim, Ms. Teskey said that her office manager work required her to be on her feet essentially all day. [R. 109.] She argues here, therefore, that her past relevant work is in the nature of a "composite job," in other words, a job with "significant elements of two or more occupations" that VEs must specifically analyze without reference to the *Dictionary of Occupational Titles*. *See* SSR 82-61 ("[C]omposite jobs have significant elements of two or more occupations and, as such, have no counterpart in the DOT. Such situations will be evaluated according to the particular facts of each individual case.").

The Court finds no error with respect to the ALJ's decision to accept the VE's reliance on the *Dictionary of Occupational Titles* to label her office manager position a sedentary one, as that position is generally performed. Most importantly, and despite bearing the burden of proof on the issue, Ms. Teskey has offered no argument as to which other specific occupations that combined to form her past work. SSR 82-61. She didn't testify during either of her hearings about the matter. Nor did she cross-examine the VE at either of her hearings when the VEs characterized office managers as sedentary jobs in the *Dictionary of Occupational Titles*. [*See* R. 374-79; 400-04.] While Ms. Teskey notes that VEs, like any other expert, aren't infallible, [dkt. 22 at 3], the ALJ was also entitled to consider Ms. Teskey's silence in the hearing when general-

ly considering the weight to give the VE's views, *see Barrett v. Barnhart*, 355 F.3d 1065, 1067 (7th Cir. 2004) ("[B]ecause Barrett's lawyer did not question the basis for the vocational expert's testimony, purely conclusional though that testimony was, any objection to it is forfeited."); *Glenn v. Secretary of Health & Human Services*, 814 F.2d 387, 391 (7th Cir. 1987) ("When an applicant for social security benefits is represented by counsel the administrative law judge is entitled to assume that the applicant is making his strongest case for benefits."). Because the Court only reviews the ALJ's findings, rather than making findings in the first instance, the Court can't say that the ALJ erred in characterizing Ms. Teksey's past work as an office manager, as generally performed and as that term is used in the *Dictionary of Occupational Titles*.

**D. The ALJ's Step Five Decision**

Based on Ms. Teskey's RFC and on information provided by the VE about the physical requirements for various jobs, the ALJ decided that Ms. Teskey could still work as receptionist, a data entry clerk, and as a typist. [R. 7-8.] At Step Five, Ms. Teskey complains that the ALJ's reliance on the VE's testimony violated SSR 00-4p.

SSR 00-4p requires ALJs to affirmatively ask VEs whether their testimony about the physical requirements for other jobs is consistent with the *Dictionary of Occupational Titles*. Disability claimants are also entitled to point out inconsistencies to the ALJ at the disability hearing. If an "apparent" inconsistency is identified—either in response to the ALJ's question or by the claimant at the hearing—SSR 00-4p requires the ALJ to must "obtain a reasonable explanation for the conflict and then "explain in the determination or decision how he or she resolved the conflict." SSR 00-4p.

Here, when the ALJ presented Ms. Teskey's RFC to the VE, it included the sit-stand option, [R. 402], which was discussed above. After hearing the VE's testimony, he asked whether

the testimony was consistent with the *Dictionary of Occupational Titles*. [R. 403.] The VE said that it was. [*Id.*] Ms. Teskey didn't contend otherwise at the hearing. [*Id.*]

Ms. Teskey contends here that, based on the SSA's training manual for ALJs, a conflict actually did exist. The manual indicates that the *Dictionary of Occupational Titles* doesn't address sit-stand options. [Dkt. 17-1 at 11.] She argues, therefore, that SSR 00-49 requires a remand, to permit the ALJ to obtain an explanation for the conflict and to permit the ALJ to explain the resolution of the conflict in his written decision.

The Commissioner notes that *Donahue v. Barnhart*, 279 F.3d 441, 446-47 (7th Cir. 2002) would preclude Ms. Teskey from being able to argue over the inconsistency here given her silence at the hearing. [Dkt. 18 at 14.] But the Commissioner overlooks that the Seventh Circuit later rejected that portion of *Donahoe* as mere dicta. *Prochaska v. Barnhart*, 454 F.3d 731, 735 (7th Cir. 2006). The law in this Circuit is now that claimants are "not required to raise" conflicts between VE testimony and the *Dictionary of Occupational Titles* at the hearing to preserve the issue for appeal. *Id.*

The Commissioner's incorrect reliance on *Donahue* doesn't, however, entitle Ms. Teskey to a remand on this issue. Because the *Dictionary of Occupational Titles* "does not address the subject of sit/stand options, it is not apparent that the testimony [referencing such an option] conflicts with [it]." *Zblewski v. Astrue*, 302 Fed. Appx. 488, 494 (7th Cir. 2008) (upholding denial of benefits). The conflict, if one exists, is a latent one only; therefore, ALJs needn't resolve it at the hearing if no one notices it. *Id.*[2]

---

[2] To the extent, if any, that Ms. Teskey contends that an unresolved conflict exists between the VE testimony and the *Dictionary of Occupational Titles* at Step Four, [*see* dkt. 17 at 14-15], she hasn't identified any other possible conflict besides the sit-stand issue. The Court has resolved that issue against her above.

- 15 -

# V.
## CONCLUSION

"The standard for disability claims under the Social Security Act is stringent….Even claimants with substantial impairments are not necessarily entitled to benefits, which are paid for by taxes, including taxes paid by those who work despite serious physical or mental impairments and for whom working is difficult and painful." *Williams-Overstreet v. Astrue*, 2010 U.S. App. LEXIS 2604, *5 (7th Cir. 2010) (per curiam). Furthermore, the standard of review of the Commissioner's denial of benefits is narrow. Taken together, the Court can find no legal basis to overturn the Commissioner's decision that Ms. Teskey doesn't qualify for disability benefits. Therefore, the decision below is **AFFIRMED**. Final judgment will be entered accordingly.

04/29/2011

_____
Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via CM/ECF only:**

J. Frank Hanley II
laurasiener@aol.com

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov